IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF INDIANA

Michael Sheneman,
    Plaintiff

vs.

Barbara Brook, AUSA;
Jesse Barrett, AUSA;
David Jones, ESQ.;
    Defendants.

-FILED-

FEB 14 2017

At _____ M
ROBERT N. TRGOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

3:17CV124

## COMPLAINT FOR WRIT OF MANDAMUS

AND NOW comes the Plaintiff, Michael Sheneman, and hereby respectfully petitions the honorable Court to enter a writ of mandamus against the Defendants and in favor of the Plaintiff, for their committing obstruction of justice and fraud upon the Court in U.S. v. Michael Sheneman (2010, also of this Court), and refer these Defendants to a Grand Jury for prosecution. For the reasons listed below, the Mandamus should be granted.

A. FACTUAL BACKGROUND

Plaintiff Michael Sheneman and his son Jeremie Sheneman, were convicted of wire fraud on May 4, 2011. The Shenemans were indicted on October 13, 2010. Sheneman wishes to explore the wrongful means of the conviction to this Court. Plaintiff asserts to this Court that Barbara Brook had a personal vendetta against Jeremie Sheneman and therefore provided false data to a grand jury to obtain the indictment. Brook not only provided false data by means of perjured testimony through government witnesses, but also by disregarding all facts of the case and pursuing her prosecution through willful blindness to the truth of the Sheneman's actions. As stated, the Shenemans were indicted on October 13, 2010. Brook ordered the Shenemans to engage in a handwriting analysis for forgery in early September, one month prior to the indictment. This analysis proved NO FORGERY

committed by the Shenemans. Plaintiff wishes to expose now, the scheme by the prosecution. AUSA Brook NEVER subpoenaed ANY documents from any offices of the four brokers involved in the case. Brook did subpoena the final signed loan documents from the title company after closing the loans through escrow for the lenders, but did such TWO AND ONE-HALF MONTHS AFTER THE INDICTMENT! This seriously brings into question the issue of probable cause.

Wire fraud is based on proof of such through documents. This indictment was obtained with no existing documents to examine at grand jury or to base the issue of fraud upon. The indictment was essentially constructed by the prosecution "winging it" to make it all fit together. It must be noted to the Court that when the documents in question were produced, the government had their special witness Mr. Newcombe from Argent Lending spend two days reviewing all of the documents. He stated that he found NO irregularities in them. Brook interviewed owner Andrew Beam (whom profited $58,000.00 from doc prep fee) and whom is a key figure in this case and no doubt, found out that Beam had ALL liability both by federal laws and by State law for documents sent to the lenders. This is also most likely where Brook found out about the conflict of interest between counsel Jones and Beam which will be addressed later. Brook also discovered that no forgery had existed and that there were no criminal acts completed by the Shenemans and that Beam carried all liability for all loan documentation and therefore, she dropped off the case. Plaintiff will now address Prosecutor Barrett's role in the scheme to convict the Shenemans. Barrett in his opening statements at the trial (trans. p. 125,126) exposes his unprofessional conduct and his quest to convict the Shenemans at all costs. When Barrett stated that co-defendant Jeremie Sheneman engaged in forgery, this statement was in stark contrast to the government's own lab results! There are no documents that exist to even suggest forgery. It must be noted that forgery was not needed as all of the buyers were eager investors and approached the Shenemans multiple times to buy. Later in his opening comments, Barrett then attacked the loan applications. He stated Jeremie Sheneman ("J.S") filled out false loan applications and lied on the applications. This, in

itself was a major lie to the Court and jury. Barrett produced four buyers. Barrett cannot produce and did not produce a loan application for buyers Gary Denaway or David Doolittle. No applications exist involving J.S. engaging in lying for these two borrowers. The next two borrowers are Gladys Zoleko ("G.Z.") and Paul Davies ("P.D."). G.Z.'s and P.D.'s properties carry the four total counts on the Shenemans. G.Z. entered under contract with Superior Mortgage on Sept. 2nd. The initial loan application which corresponds between G.Z. and Beam is dated Sept. 2nd as well. The documents already entered by Plaintiff proves the aforementioned facts of Sept. 2nd. Lauren Duessler ("L.D."), the loan processor, charged G.Z.'s $300.00 fee for a loan application on Sept. 2nd. G.Z.'s 302 report states that she came into Superior Mortgage in Sept. thus undeniable proof of the established date of Sept. 2nd is supported. Next, borrower P.D.'s contract with Superior is dated June 30th. His initial loan application with Beam's signature is June 30th. The loan application that Barrett attacks do not involve the Shenemans. A proper understanding of the 1003 or loan application which is a government form states in bold black caption the signee such as borrowers G.Z. and P.D. have all liability on the issue of information for a loan. The lender require two loan applications on each property. G.Z. bought fifteen properties which means thirty loan applications exist involving her properties. P.D. bought fourteen properties meaning twenty-eight applications exist involving P.D. and his properties. The Shenemans did NOT impersonate nor sign for any borrowers. That means all of the loan applications consistently provided the same information for the purpose of a loan. Besides the borrower must fill out, sign and date the day of the loan, a final loan application that verifies all information for a loan, or no loan is granted. The lenders rely on the borrower, the loan broker and the title company to complete a closing of the loan in a proper, audited manner or the loan will not close and a wire for funding the loan will not issue. The borrower, broker and title company must be truthful on ALL documents and these loan documents have nothing to do with the sellers of a property. The Shenemans were sellers. Not buyers nor were they borrowers. Barrett telling the jury that J.S. lied on loan applications is not only false, it

is impossible. The Shenemans were not authorized to contact any lender to provide them with documents. To expose the scheme of Barrett, Sheneman will now supply this Court with just a few false statements made by Barrett to purposely and knowingly conceal the truth:

1. Barrett told the jury the Shenemans had complete control of documents sent to the lenders;

2. Barrett told the jury that J.S. was a broker;

3. Barrett told the jury borrowers only signed minimal documents on their interview;

4. Barrett told the Court no person signed purchase agreements;

5. Barrett told the jury processor Lauren Duessler had minimal involvement when Duessler conducted numerous loans from her home and was in total control of loan processing;

6. Barrett told the jury that several homes had code violations when not one home had a code violation;

7. Barrett told the jury J.S. cut and pasted documents yet Lauren Duessler denied in her deposition that such documents existed;

8. Barrett told the jury that the Shenemans had to convince the buyers to invest when all buyers approached the Shenemans and many were repeat customers.

9. Barrett told the jury high risk loans and regular bank loans are no different;

10. Barrett told the jury the borrowers were the victims of the Shenemans when the borrowers themselves signed the essential documents that create and cause a loan to issue;

4

11. Barrett told the jury that lenders the borrowers lost money when the transcripts show not one borrower inherited a judgment and thus, there is no loss. In fact, all Lenders sold EVERY loan for a profit;

12. Barrett told the jury that a Meritage Mortgage representative named Jeff Walsh was a fictitious person that J.S. made up. This is a proven lie as Jeff Walsh is an actual Meritage representative whom was required to supply Gladys Zoleko with a final mortgage application to complete at closing;

13. Barrett purposely and knowingly lied to the jury stating that G.Z. came in to Superior Mortgage mid-summer to apply for a loan. The strategy behind that was to disguise the interview between G.Z. and Beam that took place on Sept. 2nd, thus the jury would believe the false theory of G.Z. and P.D. signing ONE BLANK document.

There are numerous other false statements that Barrett made to purposely misinform a jury whom had no clue about high risk loans that are NOT bank loans. A jury relies on a prosecutor to provide truthful, honest statements in order to draw a correct conclusion. Barrett entered all bogus exhibits that were merely downloaded from the broker/owner's mortgage banking software called Calyx, that the Shenemans had absolutely no access to. J.S. had no access to the code that contained the borrowers information.

A federal trial is required by statute to provide a jury with original documents as exhibits and not copies, nor unsigned or undated documents. The bogus exhibits could NOT cause a loan to issue and were merely entered to confuse the jury. This Court is also aware of the forged exhibit No. 27 in the trial. The third page of a four page loan application was taken out which was authentic and was signed by Beam. The third page was replaced with a forged signature of Beam's name to make it appear as if J.S. had engaged in the wrongdoing. Trans. page 77 exposes Barrett's scheme of a forged document entered which is a violation of U.S.C. 1519 and 1001, Tampering with

5

evidence. Ms. Rose Hampton, a criminal graphologist exposed this scheme. The prosecution engaged in further wrongful acts by falsely enhancing the Sheneman's 16 points for sentencing purposes when they knew this should NOT have occurred.

The statute of time for wire fraud is five years. The prosecution charged the Shenemans with all 60 homes when the Shenemans were only involved in 31 of the 60. The prosecution knew that 51 of the 60 home closings were outside the statute of 5 years and therefore, the Shenemans could not have been charged for those, and were illegally sentenced due to them. Only eight purchases by G.Z. and one by P.D. were within the required 5 years. Any properties charged to the Shenemans that pre-date 10/14/2005 are fraudulent charges as they were out of statute and can not factor in to the loss amount or relevant conduct that the Shenemans were sentenced to. The 16 point enhancement for loss between 1 and 2.5 million is null and void.

Plaintiff will now address attorney David Jones whom represented Plaintiff Sheneman in the trial. Jones failed to disclose the MAJOR conflict he had with Andrew Beam prior to trial. Jones made NO effort to defend the paperwork that the government attacked as he was not in a position to attack such paperwork as his former client whom he represented on a rape charge was and is, Andrew Beam! Beam was on probation and if he were exposed, would have had to do many years if he were convicted of another crime and Jones knew such and did NOT call Beam in as a witness as all liability for the loans in question fell upon him which would have implicated him and NOT the Shenemans. Federal regulations required Jones to recuse himself and he DID NOT and therefore, Sheneman's 5th and 6th Amendment Rights were violated. Furthermore, Jones breached his contract with Sheneman in order to not expose his client Beam to risk. By Jones not defending the paperwork, Sheneman had no chance at a fair trial. Beam had ALL liability according to government expert Newcombe. Jones COULD NOT elaborate on this vital issue and by NOT defending the paperwork, the jury was fed bogus theories of high risk lending that were not only lies, but completely inaccurate. The government contends that

pre-qualifying documents cause a loan to issue when they DO NOT. If this were the case, fraud would be rampant throughout the loan industry. In truth, the closing documents are what cause a loan to issue which are settled through a title company whom audits the loan closing package, and has the loan closed in front of a notary or attorney whom verifies the identity of the signers of the loan documents. In such package is a final loan application that MUST be signed or the lender will not fund the loan. Jones could have easily utilized this paperwork to exonerate Sheneman and to prove that the pre-qualifying documents are NOT what caused the lenders to issue the wire to fund the loans. In addition, ALL issues that the government attacked the Shenemans on were covered in, and agreed to by the borrowers in the purchase agreement, including ALL down payment issues. All borrowers by signing the purchase agreement and the closing package (loan documents) made every single transaction legal. Jones could not, and did not make these issues clear as to not expose Beam, whom is the only person to profit from the closing of the loans ($58,000.00 in loan origination and document preparation fees). Shouldn't the liability for loans be on the loan broker whom made a profit?

B. LEGAL PRECEDENT

Plaintiff moves this Court to issue a Writ of Mandamus against the defendants requesting that the Court present the exposed fraud on behalf of the defendants in prosecuting Sheneman, to a Federal Grand Jury under the Common Law pursuant to O'Bryan v. Chandler, (352 F.2d 987) 10th Cir. (1965). This Court owes Plaintiff a duty under 28 U.S.C. 453, his oath of office to administer Justice equally and to uphold the U.S. Constitution. As proven, Sheneman's rights to the 5th and 6th Amendments (Due Process and Legal Representation) were destroyed by the defendant's in this Court, and this Court has a duty to report all crimes that take place obstructing justice.

WHEREFORE, THE FOREGOING MOTION SHOULD BE GRANTED AND THE DEFENDANTS REFERRED TO A FEDERAL GRAND JURY FOR CRIMINAL PROSECUTION.

Executed this 10th day of February, 2017 under penalty for perjury.

                         Respectfully Submitted;

*Michael Sheneman*

Michael Sheneman -
FCI Elkton
P.O. Box 10
Lisbon, OH 44432

(Plaintiff, Pro Se)